**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cedric R. Allen,<br><br>    Plaintiff,<br><br>vs.<br><br>R. Hernandez, et al.,<br><br>    Defendants. | No. CV-05-0145-SRB (PC)<br><br>**ORDER** |

The Court now considers Defendants' Motion for Summary Judgment (Doc. 33) and Plaintiff's Motion for Opposition to Defendants Summary Judgment ("Plaintiff's Opposition"), which requests summary judgment in Plaintiff's favor (Doc. 37).

**I.  BACKGROUND**

Plaintiff Cedric R. Allen is a California prisoner proceeding *pro se* who was transferred to the California State Prison Corcoran ("CSP-Corcoran") on August 7, 2003 to serve terms in a Security Housing Unit ("SHU") because of mental illness and disciplinary violations. (Defs.' Statement of Undisputed Facts ("DSOF") at 1-3.) While being escorted from the bus on arrival, Plaintiff became verbally abusive toward staff, using threats and obscenities. (DSOF, Ex. A, Attach. 1 at 42-68.) Plaintiff testified that he didn't remember exactly what he said to staff that day, but that he "challenged them," gave them "back-talk," and did not cooperate with instructions. (DSOF, Ex. C, Pl.'s Dep. 11:7-12:25, 15:13-16:6.)

1  Plaintiff swung his elbows at staff, who then held him on the ground and applied leg
2  restraints. (DSOF, Ex. A, Attach. 1 at 42.)

3  The incidents at issue in this lawsuit occurred on August 9, 2003. Plaintiff
4  complained to Officer Hernandez that he had not been given breakfast that morning. (DSOF
5  ¶ 11, Ex. C, Pl.'s Dep. 17:12-17, 19:20-21:20.) Plaintiff stated that he became "highly upset"
6  because he had not been fed and had "words back and forth" with Officer Hernandez.
7  (DSOF ¶ 11, Ex. C, Pl.'s Dep. 20:18-21:20.) Plaintiff testified that he "was intentionally
8  trying to get out of [his] cell so [they] could face each other." (DSOF ¶ 11, Ex. C, Pl.'s Dep.
9  21:16-17.) Later that morning, as Officer Bautista was escorting Medical Technical
10 Assistant ("MTA") Maldonado on her rounds, Plaintiff lied to Maldonado and falsely
11 claimed that he was suicidal so that he could get out of his cell and confront Officer
12 Hernandez in a holding cell "face-to-face." (DSOF ¶ 12, Ex. A, Attach. 1 at 69-103; Ex. C,
13 Pl.'s Dep. 21:22-24:9.) Plaintiff knew that if he claimed to be suicidal, he would be escorted
14 to a holding cell and then put under psychiatric care. (DSOF ¶ 12, Ex. C, Pl.'s Dep. 22:12-
15 20.) Plaintiff hoped to be able to confront Officer Hernandez without his handcuffs on.
16 (DSOF, Ex. C, Pl.'s Dep. 23:25-24:9.)

17 Officers Hernandez and Pruneda responded to Officer Bautista's request for help
18 escorting Plaintiff to a holding cell. (DSOF ¶ 13, Ex. A, Attach. 1 at 81.) Officer Hernandez
19 instructed Plaintiff to turn around and put his hands through the tray port so he could be
20 handcuffed. (DSOF ¶ 13, Ex. C, Pl.'s Dep. 26:4-27:6.) The officers handcuffed Plaintiff,
21 closed the food port, and opened the cell door. (DSOF ¶ 13, Ex. C, Pl.'s Dep. 27:7-13.)
22 Officers Hernandez and Pruneda each held one of Plaintiff's arms and escorted him to the
23 holding cell, which was approximately ten to twenty feet away. (DSOF ¶ 13, Ex. C, Pl.'s
24 Dep. 28:20-29:13.) Plaintiff claims that he was "more [or] less dragged, rather than escorted
25 to the holding cell." (Pl.'s Opp'n at 3.) While walking to the holding cell, Plaintiff and the
26 officers exchanged words and Plaintiff challenged them to take off his handcuffs so they
27 could fight. (DSOF ¶ 13, Ex. A, Attach. 1 at 69; Ex. C, Pl.'s Dep. 29:16-22, 41:1-8.)
28 Plaintiff claims that he called Defendants a "bunch of prejudice [sic] Mexicans" and that this

angered the officers. (Pl.'s Opp'n at 4.) Plaintiff also claims that Officer Hernandez used obscenities and verbally taunted Plaintiff on the way to the holding cell. (Pl.'s Opp'n at 4.)

Officers Hernandez and Pruneda took Plaintiff into the holding cell and had him "up against the wall" and were "wrestling" with him. (DSOF ¶ 14, Ex. C, Pl.'s Dep. 30:3-13.) Plaintiff testified that the officers did not physically hit, punch, or knee him or bang his head against the wall, and described Officer Hernandez's conduct as "almost comical." (DSOF ¶ 14, Ex. C, Pl.'s Dep. 30:3-31:7, 42:13-19.) Plaintiff challenged the officers to take his handcuffs off using obscene language. (DSOF ¶ 14, Ex. C, Pl.'s Dep. 30:14-18.) Plaintiff testified that Officer Hernandez left the holding cell and then play slap boxed through the bars of the holding cell, ducking and dodging in a "playful way." (DSOF ¶ 15, Ex. C, Pl.'s Dep. 31:1-32:4.) Plaintiff stated that Officer Hernandez was not really trying to slap him and didn't actually hit him. (DSOF ¶ 15, Ex. C, Pl.'s Dep. 32:1-19.) Officer Hernandez returned to the holding cell several times. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 32:20-22, 38:1-7.) Officers Hernandez and Pruneda reported that Plaintiff spit on them. (DSOF, Ex. A, Attach. 1 at 91-96.) Plaintiff denies that he spit on the officers and describes himself as "a kicker. I will kick you, but I will not spit on you." (DSOF, Ex. C, Pl.'s Dep. 33:21-24.) Plaintiff admitted throwing toilet water on staff during previous incidents but denied ever spitting on an officer. (DSOF Ex. C, Pl.'s Dep. 35:14-36:9.)

Sergeant Beer responded to an alarm, and Officer Hernandez told him that Plaintiff had spit on him and Officer Pruneda. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 38:21-39:9.) Officer Hernandez tried to apply a spit mask to Plaintiff, but it tore. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 39:10-13, 45:1-6.) Plaintiff stated that Officer Hernandez "gave it a pull a couple times" before the officers put Plaintiff on the ground. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 39:10-13, 45:1-6.) Plaintiff's shoes were removed and leg restraints were applied. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 45:20-23.) Sergeant Beer put his knee on Plaintiff's neck or back and threatened to "mace" him in the mouth if he kept talking. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 46:2-47:7.) Plaintiff stated that he had difficulty breathing while he was held down, but that he did not have any injury from having difficulty breathing and that he was never actually sprayed with

1  mace. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 46:21-47:22.) Plaintiff testified that he was held on
2  the ground for ten minutes while officers got another spit mask and put it on him, and now
3  claims in his Opposition that he was on ground for fifteen to twenty minutes. (DSOF ¶ 16,
4  Ex. C, Pl.'s Dep. 48:18-23; Pl.'s Opp'n at 7.) Plaintiff testified that he "mouthed off,"
5  challenged staff, and "manipulated myself out of the cell," but "didn't do anything wrong."
6  (DSOF ¶ 17, Ex. C, Pl.'s Dep. 48:9-11.)

7  Plaintiff was then escorted to the infirmary by officers other than Defendants. (DSOF
8  ¶ 17, Ex. C, Pl.'s Dep. 48:25-49:13.) When Plaintiff was medically examined on that day,
9  he testified that he was not physically hurt, was not suicidal, did not need to see the
10 psychiatrist, and had only said that he was suicidal to get out of his cell. (DSOF ¶ 18, Ex.
11 C, Pl.'s Dep. 50:3-17.) Plaintiff stated that he never had any "real injury" and that he might
12 have had "some bruises" but "never anything substantial" or "significant" like a "busted lip"
13 or a black eye. (DSOF ¶ 18, Ex. C, Pl.'s Dep. 50:10-17, 52:13-14.) At his deposition,
14 Plaintiff confirmed that he told medical staff on the day of the incident that he had no
15 injuries. (DSOF ¶ 20, Ex. C, Pl.'s Dep. 51:5-52:1.) Plaintiff's medical records note that he
16 told medical staff that he had lied about being suicidal. (DSOF ¶ 19, Ex. B, Attach. 1 at 29;
17 Ex. C, Pl.'s Dep. 51:1-17.) Plaintiff also told Officers Bautista and Coffia that he had lied
18 about being suicidal so he could get out of his cell. (DSOF ¶ 19, Ex. A, Attach. 1 at 82, 87.)
19 After his medical examination, Plaintiff was escorted back to his housing unit, where
20 Sergeant Beer gave him lunch and told him that he would be moved to a different housing
21 unit so that he would be separated from Officer Hernandez. (DSOF ¶ 19, Ex. C, Pl.'s Dep.
22 58:1-59:6.) Officer Bautista and Sergeant Beer reported that Plaintiff had admitted to
23 spitting on Officers Hernandez and Pruneda. (DSOF ¶ 19, Ex. A, Attach. 1 at 82, 85.)

24 Plaintiff was treated by a physician on August 13, 2003. (DSOF ¶ 20, Ex. B, Attach.
25 1 at 32.) Plaintiff complained of minor back problems and described the altercation with
26 officers on August 9. (DSOF ¶ 20, Ex. B, Attach. 1 at 32.) Plaintiff reported that he had
27 suffered numerous minor abrasions and minor head injuries and wanted pain medication.
28 (DSOF ¶ 20, Ex. B, Attach. 1 at 32.) Plaintiff stated that medical staff had not completed a

1  CDCR Form 7219 (Medical Report of Injury); however, Plaintiff later confirmed that the
form was in fact completed. (DSOF ¶ 20, Ex. A, Attach. 1 at 97; Ex. B, Attach. 1 at 32; Ex.
C, Pl.'s Dep. 51:5-20.) The physician noted one contusion, bruising on the left triceps, and
a small healing scab on the right ankle. (DSOF ¶ 20, Ex. B, Attach. 1 at 32.) Plaintiff said
that the bruising and abrasions were not significant, and that the scab could have come from
the use of leg restraints. (DSOF ¶ 20, Ex. C, Pl.'s Dep. 52:2-53:1.)

Plaintiff was charged and found guilty of a disciplinary violation for battery on staff as a result of the incident on August 9, 2003. (DSOF ¶ 21, Ex. A, Attach. 1 at 69-74.) On August 23, 2003, Plaintiff submitted a grievance claiming that Defendants had assaulted him on August 9, that MTA Maldonado had not examined him for chest pain or injuries after the incident, and that their conduct was racially motivated and in retaliation for Plaintiff's prior assault on Sergeant Fisher. (DSOF ¶ 22, Ex. A, Attach. 1 at 104-09.) Plaintiff's grievance was denied at all levels. (DSOF ¶ 22, Ex. A, Attach. 1 at 104-09.) Plaintiff filed suit in this Court on February 2, 2005. The Court now considers Defendants' Motion for Summary Judgment and Plaintiff's Opposition, which requests summary judgment in Plaintiff's favor.

## II.  LEGAL STANDARDS AND ANALYSIS

### A. Failure to Comply with Local Rules

Defendants' Reply argues that Plaintiff's Motion should be stricken and summary judgment entered for Defendants because Plaintiff has failed to comply with local rules governing summary judgment oppositions. (Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply") at 2.) Local Rule 56-260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication.

The Statement of Facts included in Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion fails to comply with these local rules because it does not refer to the record evidence and Plaintiff has failed to reproduce the itemized facts in Defendants' Statement of Undisputed Facts and either admit or deny those facts. "The remedy for Plaintiff's failure to address Defendants' undisputed facts and Defendants' evidence is to consider this evidence as undisputed." *Collins v. County of Kern*, 390 F. Supp. 2d 964, 971-72 (E.D. Cal. 2005). In the interest of justice, the Court declines to grant Defendants' Motion on the ground that Plaintiff failed to comply with Local Rule 56-260(b) and will consider Plaintiff's Opposition to determine whether it contains any evidence to refute Defendants' evidence. The Court will consider both parties' Motions and the attached Exhibits in deciding whether either party is entitled to summary judgment.

### B. Motions for Summary Judgment

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question

of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against Defendants Pruneda, Hernandez, and Beer for excessive force under the Cruel and Unusual Punishments Clause of the Eighth Amendment. The United States Supreme Court has held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)). The Court observed that:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

*Id.* at 7 (quoting *Whitley*, 475 U.S. at 321-22) (internal quotations omitted).

The Court recognized that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* at 6 (quoting *Whitley*, 475 U.S. at 320). "[C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley*, 475 U.S. at 322. In determining whether the use of force was "wanton and unnecessary," the Court may properly consider the extent of injury suffered by an inmate, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). "The Eighth Amendment's prohibition of 'cruel and unusual'

1  punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley*, 475 U.S. at 327) (internal quotations omitted).

The officers moved Plaintiff to the holding cell and attempted to control him after he became verbally abusive and threatening and falsely claimed to be suicidal in order to get out of his cell and confront Officer Hernandez. Plaintiff admitted in his deposition that he did not have any significant injuries as a result of the incident and that he did not report any injuries to examining medical staff on the day of the incident. (DSOF ¶ 18, Ex. C, Pl.'s Dep. 50:3-17, 51:5-52:1, 52:13-14.) The examining physician, who saw Plaintiff six days after the altercation, found only one contusion, bruising on the upper left arm, and a small healing scab on the left ankle, likely caused by the leg restraints. (DSOF ¶ 20, Ex. B, Attach. 1 at 32.) The use of force was minimal and reasonable under the circumstances, and there is no evidence showing that it was applied maliciously or sadistically to cause harm.

Plaintiff disputes the assertion that he spit on Officers Hernandez and Pruneda as they were escorting him to the holding cage. However, this does not create a genuine issue of material fact, because even assuming that Plaintiff did not spit on the officers, their use of force in escorting him to the holding cell, "wrestling" with him, applying a spit mask, holding him down, and applying leg restraints was applied in a good faith effort to maintain discipline. Similarly, Sergeant Beer's use of force in putting his knee on Plaintiff's back or neck while other officers applied the spit mask and leg restraints was applied in a good faith effort to maintain discipline after it was reported to him that Plaintiff had spit at officers. Sergeant's Beer's threat to use mace if Plaintiff did not stop talking also does not rise to the level of a constitutional deprivation under § 1983. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (internal quotations omitted).

Plaintiff's Opposition claims that he was beaten in the holding cell and that he did report physical injuries. (Pl.'s Opp'n at 4-11.) However, these claims are contradicted by Plaintiff's deposition testimony, and he cannot create an issue of fact based on declarations

that are contradicted by his prior deposition testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). Plaintiff testified that the officers did not physically hit, punch, or knee him and described Officer Hernandez's conduct as "almost comical." (DSOF ¶ 14, Ex. C, Pl.'s Dep. 30:3-31:7.) Plaintiff explained at his deposition that the officers "wrestled" with him but did not slam his head against the wall or cause any injuries. (DSOF ¶ 14, Ex. C, Pl.'s Dep. 42:13-19, 44:1-17.) As discussed above, Plaintiff described his injuries as not significant and did not report any injuries to examining medical staff on the day of the incident. (DSOF ¶ 18, Ex. C, Pl.'s Dep. 50:3-17, 51:5-52:1, 52:13-14.) The injuries found by the examining physician six days later were only minor.

Plaintiff also claims that he was strangulated and choked by the torn spit mask and had difficulty breathing when he was held on the ground. (Pl.'s Opp'n at 5-9.) Plaintiff's description in his deposition of Officer Hernandez's attempt to apply the spit mask states that he "gave it a pull a couple times," but Plaintiff did not experience any injuries due to the use of the spit mask or due to his difficulty breathing when he was held down. (DSOF ¶ 16, Ex. C, Pl.'s Dep. 39:10-13, 45:1-6, 46:21-47:22.) Considering the extent of Plaintiff's injuries, the need for the application of force, the relationship between that need and the amount of force used, and the threat reasonably perceived by the officers, it is clear that the force used was applied in a good faith effort to maintain discipline. No genuine issues of material fact remain, and, after viewing the evidence most favorably to Plaintiff, Defendants are clearly entitled to prevail as a matter of law.[1]

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 33) and denying Plaintiff's Motion for Opposition to Defendants Summary Judgment, which

---

[1] Because the Court concludes that Plaintiff has failed to show a violation of the Eighth Amendment, the Court does not reach Defendants' argument concerning qualified immunity.

requests summary judgment in Plaintiff's favor (Doc. 37). The Clerk of the Court is directed to enter judgment in favor of Defendants.

DATED this 19th day of March, 2009.

_____
Susan R. Bolton
United States District Judge